Rev. 6/03

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Pro se [Non-prisoner] Complaint Form

FILED NOV 1 8 2010 IN THIS OFFICE Clerk U. S. District Court Greensboro, N.C.

Victor Irving Jarvis, )
(Your Name) )
Plaintiff, )
)
)
v. ) Civil Action No. 1:10CV896
Bank of America Corporation ) (to be assigned by the Clerk)
)
_____ )
_____ )
)
Defendant(s). )

COMPLAINT

I. JURISDICTION

United States District Court Middle District of North Carolina

II. PARTIES

A. Plaintiff

Name of Plaintiff: Victor Irving Jarvis

Address: 4014 Braddock Road
High Point, NC 27265

B. Defendant(s) (**Notice**: A person must be identified in subsections B and C in order to be considered as a defendant.)

Name of Defendant: Bank of America Corporation

Current Address: 100 North Tryon Street
Charlotte, NC 28255

Page 1

C.  Additional Defendants (please provide the same information for each defendant as listed in Item B above):

III. STATEMENT OF CLAIM
(State here as briefly as possible the **FACTS** of your case.  Do this by identifying the alleged legal wrong and by describing how each defendant named in Section II.B. and C. above is personally responsible for depriving you of your rights.  Include relevant times, dates, and places.  Also, you must state the basis for federal jurisdiction.  In other words, why should the case be in federal court as opposed to state court.  **DO NOT GIVE LEGAL ARGUMENTS OR CITE ANY CASES.** Number and set forth each separate claim in a separate paragraph.)  (Attach extra sheets if necessary.)

Plaintiff Victor Irving Jarvis was an employee of Merrill Lynch and worked in their Greensboro, North Carolina office from May 2007 until December 2008. Subsequent to Plaintiff's employment at Merrill Lynch, the company was purchased by Bank of America Corporation (Bank of America).

During Plaintiff Victor Irving Jarvis's employment at Merrill Lynch he was a victim of Race Discrimination and Retaliation.

Page 2

### III. STATEMENT OF CLAIM - continued.

The basis for federal jurisdiction is a result of violations by Bank of America (Merrill Lynch) under Title VII of the Civil Rights Act of 1964.

The "Equal Employment Opportunity Commission ("EEOC") has issued Plaintiff a "Notice of Right to Sue."

Plaintiff now brings this case to vindicate his right to be free from Race Discrimination and Retaliation

Plaintiff claims under 42 U.S.C. §1981 that throughout his employment with Bank of America (Merrill Lynch) he was subjected to race discrimination and retaliation.

Bank of America (Merrill Lynch) treated Plaintiff differently and less favorably than employees who were not African-American including by denying him the opportunity to advance his career through supporting specific business opportunities, discrimination in practices of their team based opportunities, and retaliation when Plaintiff took steps to prevent discrimination and isolation.

### III. STATEMENT OF CLAIM - continued.

Plaintiff claims that on numerous occasions during his employment at Bank of America (Merrill Lynch) client accounts were distributed in a discriminatory basis.

Plaintiff claims that team based opportunities were assigned in a discriminatory basis and Bank of America (Merrill Lynch) used company funds to compensate the discriminatory based teams.

Plaintiff claims an overall disparate impact of policies by Bank of America (Merrill Lynch) towards African American employees.

III. STATEMENT OF CLAIM - continued.

Plaintiff claims that Bank of America (Merrill Lynch) has maintained a discriminatory system of referrals, leads, walk-ins, call-ins, and IPO's. Complainant did not receive a single lead, walk-in, call-in, referral, or IPO in his career at Bank of America (Merrill Lynch).

Plaintiff claims he cultivated and established significant relationships with key business and government leaders in the Democratic Republic of the Congo ("DRC") including securing long term goodwill, trust, and respect of many of these leaders. Plaintiff facilitated Investment Banking opportunities for Merrill Lynch during a company sponsored visit in August 2008. Despite providing Merrill Lynch with key information and government documents, Merrill Lynch did not provide Plaintiff with professional feedback or support. This discrimination occurred even though Plaintiff had obtained a signed "Letter of Intent to the DRC clients from the Managing Director and Head of Emerging Markets Structuring at Merrill Lynch International in London, England. The targeted value of the relationship with the DRC was 12 Billion dollars for infrastructure development.

IV. RELIEF

State briefly and exactly what relief you want from this court.

Declaratory relief, including but not limited to a declaration that Defendant's actions violate Title VII;

Back pay, in amounts determined at trial;

Compensatory and consequential damages, including for emotional distress;

Punitive damages;

Costs of this action;

Any such further relief as justice allows.

Signed this 18th day of November, 2010.

*Victor J. James*
Signature of plaintiff

4014 Braddock Rd.
Address

High Point NC 27265

336 841-5451
Telephone number

Page 6

Victor Jarvis
Charge of Discrimination, p. 1

## I. Introduction

Merrill Lynch & Co., Inc. ("Respondent," "Merrill Lynch" or "the Firm") is a financial services holding company, incorporated in Delaware and headquartered in New York, whose subsidiaries provide financial and investment services. Its subsidiary, Respondent Merrill Lynch, Pierce, Fenner & Smith Incorporated, is a full service securities firm engaged in the retail and institutional sale of securities, options contracts and various other financial products. Collectively, Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated are herein referred to as "Merrill Lynch." Merrill Lynch employs nearly 17,000 persons nationwide as Financial Advisors ("FAs" or "brokers") who sell its products and services at its offices located throughout the country, including in Chicago, Illinois. Merrill Lynch is the country's largest provider of brokerage and brokerage-related services. Merrill Lynch is a publicly-traded, Fortune 100 corporation incorporated in Delaware with retail branches across the United States.

Respondent Bank of America Corporation ("Bank of America") is a financial services company incorporated in Delaware and headquartered in North Carolina that provides a wide variety of banking and investment services.[1] Collectively, Bank of America Corp. and its affiliates and subsidiaries are herein referred to as "Bank of America."

On September 15, 2008, Bank of America and Merrill Lynch announced that Bank of America would acquire Merrill Lynch for approximately $50 billion in an all-stock transaction.

Complainant, Victor Jarvis, was employed by Merrill Lynch from May 2007 to December 2008 in the Firm's Greensboro, North Carolina office. During his employment at Merrill Lynch, Complainant discharged all duties assigned to him competently. Despite his dedicated service, Complainant was subjected to race discrimination and retaliation throughout his employment with Merrill Lynch. Merrill Lynch treated Complainant differently and less favorably than employees who are not African-American, including by denying him the opportunity to advance his career through supporting specific business opportunities. Some of this discrimination includes, but is not limited to, the incidents described below.

The race discrimination suffered by Complainant is consistent with and part of Merrill Lynch's nationwide, systemic discrimination against African-Americans. Complainant is a class member in the putative nationwide class action, *McReynolds et al. v. Merrill Lynch*, Case No. 05-cv-06583, pending in United States District Court in the Northern District of Illinois ("*McReynolds*"). Complainant is relying on that lawsuit and incorporates the allegations therein into this Charge of Discrimination as though stated herein. *See* Ex. A, Second Amended Complaint, *McReynolds*. All claims set forth in this Charge relate back to that lawsuit and the representative charges of discrimination affiliated with that lawsuit. *See, e.g.,* Ex. B., Maroc Howard Charge of Discrimination.

## II. Respondent Has and Is Engaged in Nationwide, Systemic Discrimination and Retaliation Against African-Americans.

---

[1] Bank of America will succeed Merrill Lynch as Complainant's employer and will assume liability for Merrill Lynch's unlawful conduct, as well as its own actions.

358275-1

Victor Jarvis
**Charge of Discrimination, p. 2**

As described more fully in the *McReynolds* Complaint (Exhibit A), Merrill Lynch has and is engaged in a pattern and practice of race discrimination and retaliation against its African-American employees and employs company-wide practices and policies that have a disparate impact on African-Americans. Merrill Lynch fails to provide African-Americans with equal opportunities to earn income and advance to management. The Firm maintains stereotypical and biased views about African-Americans that form the basis of personnel decisions and create an environment where occupational segregation, disparate treatment and harassment are pervasive and condoned. Merrill Lynch's human resources department is ineffective at resolving complaints of race discrimination and harassment, and, as a result, many African-Americans recognize the futility of lodging internal complaints. Those who do come forward are retaliated against. Merrill Lynch's pattern and practice of race discrimination is ongoing, as demonstrated in part by the dramatic, historic and continued underrepresentation of African-American brokers and management. Merrill Lynch's ongoing, systemic discrimination constitutes a continuing violation.

Merrill Lynch compensates and distributes resources to its FAs based on a "quintile system" that measures and ranks brokers based largely on "production" and length of service. As a result of the patterns and practices set forth below, African-Americans at Merrill Lynch are dramatically overrepresented in the fourth and fifth quintiles and underrepresented in the first and second quintiles of the Firm's system of performance and compensation. Merrill Lynch is and has been aware of the past and current discriminatory impact of its actions, policies and practices at the highest levels of the organization. Indeed, during the Firm's African-American Financial Advisor Conference, senior management acknowledged the underrepresentation, high turnover, and lopsided quintile representation of African-Americans among the Firm's broker ranks. African-American brokers are also underrepresented among the ranks of senior brokers; on information and belief, Merrill Lynch employs fewer than 30 African-American brokers who have a length of service ("LOS") of over fifteen years. Reasons for these gross disparities, among others, include the discriminatory and differential application of the Merrill Lynch account distribution policy, as well as various mechanisms, like teams, employed by Merrill Lynch managers to circumvent that policy in order to steer productive assets and other income-generating opportunities to white brokers, and away from African-American brokers.

As part of the settlement of the *Cremin v. Merrill Lynch* gender discrimination litigation, Merrill Lynch agreed to create and institute a uniform national account distribution policy. This policy was supposed to be non-discriminatory and based upon objective standards. Unfortunately, however, and as has been well known to Merrill Lynch, the account distribution policy, and later revisions thereto, continued to reward top producers at the Firm who were the beneficiaries of discriminatory account distributions and otherwise disadvantaged African-Americans. Merrill Lynch managers and brokers have also devised and employed a number of means designed to evade or manipulate the account distribution policy to the benefit of white brokers and to the detriment of African-American brokers. One such method is the use of partnerships, or teams, of brokers.

Beginning in the mid-1990s, Merrill Lynch developed and promoted various partnership models for its brokers. Partnerships at Merrill Lynch operate in a discriminatory fashion. Partnerships are formed at the direction or with the approval of non-African-American managers, and often work to defeat or manipulate the account distribution policy and to steer assets to non-African-American brokers who would not otherwise receive accounts under that policy.

358275-1

Victor Jarvis
**Charge of Discrimination, p. 3**

African-American brokers are largely excluded from favorable teams. Worse still, Merrill Lynch often uses partnerships to undermine the performance and sometimes to cannibalize the books of business of African-American brokers. Unlike partnerships created between non-African-American brokers, partnerships which include African-Americans often have inequitable terms, are not formed using standardized Merrill Lynch "team" policies and other institutional support, and are not formalized in writing. African-American brokers are often lured or forced into partnerships as the only available means to receive any account distributions or to maintain their employment at the Firm. When partnerships between white brokers are dissolved, Merrill Lynch managers act to ensure a fair distribution of partnership assets. However, when partnerships involving African-American brokers are dissolved, African-American brokers do not receive the same equitable distributions or treatment as their white counterparts. In sum, with white brokers, partnerships are used to develop promising careers, gain career advantages, save failing brokers, and facilitate succession planning that enables brokers to retire with substantial income and dignity. The experiences of African-American brokers are quite different, as partnerships serve to diminish their books of business and opportunities.

Merrill Lynch's nationwide pattern and practice of discrimination, harassment and retaliatory conduct against African-Americans, including Complainant, includes but is not limited to the following practices:

a) failing to hire African-Americans;

b) denying African-Americans the same level of support, training, resources and opportunities for career advancement provided non-African-Americans;

c) underutilizing African-Americans in high paying jobs and otherwise engaging in job segregation;

d) steering African-Americans into clerical positions, investment advisor positions, or other non-producing roles;

e) employing discriminatory recruiting, hiring and promotion practices;

f) employing discriminatory management grooming, eligibility requirements, assessment, and selection practices;

g) taking race into account when making employment decisions, including but not limited to decisions regarding training, and decisions regarding transferring and assigning walk-ins, leads, referrals, departing brokers' books and initial public offerings ("IPOs");

h) denying African Americans the same level of support and resources in connection where the potential clients are not Caucasian;

i) targeting the accounts and clients of African-American brokers and reassigning them to white brokers using a number of means, including partnerships;

j) failing to credit African-Americans for their experience on the same basis as non-African-Americans and failing to consider African-Americans for

Victor Jarvis
Charge of Discrimination, p. 4

    timely promotions or title changes on the same basis as non-African-Americans;

k) employing policies and practices that disproportionately disadvantage African-American brokers and/or that reinforce and continue past discrimination, including but not limited to policies and practices regarding account distributions, partnerships, the "penalty box" and other practices;

l) failing to apply and enforce Merrill Lynch policies in a consistent, race-neutral fashion, to the detriment of African-American brokers;

m) employing a number of means to exclude African-Americans from income-generating opportunities, including but not limited to using partnerships to deny African-American brokers the opportunity to receive valuable account distributions or to otherwise participate in lucrative business opportunities;

n) systematically paying African-Americans lower wages and/or denying African-Americans opportunities to increase their earnings, including commissions;

o) negligently hiring and/or retaining individuals with known propensities to discriminate against or harass African-Americans;

p) creating an environment that is hostile and offensive to African-Americans;

q) retaliating against African-Americans who complain of discrimination by, among other things, subjecting them to further discrimination, retaliation, verbal attacks, discipline, reassignment of their clients or accounts, and/or termination;

r) making employment decisions based on racial stereotypes, including but not limited to steering clients, accounts, and opportunities on the basis of race;

s) employing policies and practices that have a disparate impact against African-Americans;

t) manipulating the length of service ("LOS") designation of African-Americans to safeguard non-African-Americans from termination or disciplinary action and/or to manipulate earnings and performance;

u) terminating African-Americans on account of race and/or due to diminished performance and/or production that was lower than it would have been but for the unlawful conduct of Merrill Lynch; and

v) defaming African-Americans to their clients and on their Uniform Termination Notice For Securities Industry Registration Form U-5's ("Form U-5"), but issuing clean Form U-5's to non-African-Americans who were charged with disciplinary violations or race discrimination.

358275-1

Victor Jarvis
Charge of Discrimination, p. 5

### III. Complainant Was Subjected to Unlawful Treatment by Merrill Lynch.

Consistent with Merrill Lynch's systemic discrimination against African-Americans, Complainant was subjected to race discrimination and retaliation throughout his career. Merrill Lynch has failed to provide Complainant with the same opportunities to succeed and for promotion as non-African-Americans. Complainant has not received the same level of resources, mentoring, managerial support, sales support, and income-generating opportunities as his non-African-American counterparts. Complainant has been subjected to a hostile work environment in which African-Americans are treated as inferior. When Complainant evidenced his affiliation with a *McReynolds* class member, he was retaliated against and was ultimately terminated. As a result of the Firm's systemic discrimination, Complainant received lower wages and commissions than similarly situated non-African-Americans and was shut out of career advancing opportunities. Merrill Lynch's unlawful conduct constitutes a continuing violation and includes, but is not limited to, the events described herein.

<u>Unlawful Treatment as Financial Advisor</u>

Merrill Lynch recruited Complainant to join its Greensboro, ~~South~~ [11/18/10 North] Carolina office as a FA Trainee in May 2007. When Complainant arrived at the Greensboro Merrill Lynch office, he encountered a highly segregated workforce. Complainant began his career as one of only two African-American FAs or FA Trainees in his office of over forty FAs. Nor did Merrill Lynch appear to make any real effort to hire African-American FAs. Due to Respondent's systemic discrimination, he was soon driven out of the Firm.

Complainant, like other African-Americans at Merrill Lynch, has been denied the same income-generating opportunities as brokers who are not African-American, as alleged in the *McReynolds* lawsuit. Throughout Complainant's employment, Merrill Lynch has maintained a discriminatory system of distributing accounts, referrals, leads, walk-ins, call-ins, and IPOs. Complainant did not receive a single lead, walk-in, call-in, referral, or IPO in his career at Merrill Lynch.

Merrill Lynch's racially discriminatory behavior towards Complainant stemmed not only from the fact that he is African American, but also from the fact that the potential clients he sought support from Merrill Lynch to do business with were not Caucasian, but rather were from Africa.

For most of 2008, Complainant cultivated and established significant relationships with key business, and government leaders in the Democratic Republic of the Congo ("DRC"), including securing the long term goodwill, trust, and respect of many of these leaders. Indeed, Complainant facilitated Investment Banking opportunities for Merrill Lynch on his visit to the DRC during the last week in August 2008. Despite providing Merrill Lynch with this information, he never received any feedback indicating whether Merrill Lynch was interested in pursuing these opportunities.

In order to be successful in this potential business opportunity, Complainant sought the resources and support of Merrill Lynch. Complainant's Branch Manager, E. Darby Henley, Jr. ("Henley")[2] confirmed that Merrill Lynch would reimburse him for travel to the DRC in order to

---

[2] Another African American FA in the Greensboro, North Carolina office has alleged complaints of race discrimination and retaliation against Darby. *See supra* at FN 4.

358275-1

cultivate this relationship.[3] Complainant obtained a signed Letter of Intent to Africa from the Managing Director & Head of Emerging Markets Structuring Merrill Lynch International in London, England, and made the necessary arrangements to travel to the DRC in August 2008.[4] This trip was tremendously successful. Complainant and fellow FA, Capel met with the Provincial Government and Central Government officials of the DRC regarding a potential $12 billion infrastructure deal in exchange for mineral or gas concessions. Upon returning, Complainant issued various reports, and provided key DRC government documents to Merrill Lynch's Investment Banking Department, the Office of General Counsel, and his management team setting forth potential $12 billion infrastructure deal in exchange for mineral or gas concessions deal with the DRC.

Darby immediately began to undermine Complainant's effort in this regard. For example, Darby stated that "he doesn't think that the Congolese Government officials know what they are doing," or words to that effect, and inferred that only the investment bankers could explain the deal. On November 11, 2008, Darby issued a Letter of Education to Complainant falsely accusing him of company policy violations concerning his conduct and involvement with the potential DRC deal. Darby took such action despite the fact that he had full knowledge of all Complainant's activities either via verbal communications or through the four reports Complainant issued concerning the potential DRC deal.

As a direct result of Merrill Lynch's discriminatory conduct towards Complainant and direct effort to impeded his ability to advance his career, Complainant was ultimately terminated for low production in December 2008.

<u>Hostile Work Environment and Retaliation</u>

Throughout his career at Merrill Lynch, Complainant, like other African-Americans, has been subjected to a hostile work environment where African-Americans are treated as inferior, in a racially stereotypical fashion, and subjected to abusive and harassing treatment, comments and behavior. In addition to the differential treatment and retaliation described herein, Complainant has been treated as an unwelcome outsider throughout his employment at Merrill Lynch. Complainant has been excluded from networking and social opportunities that might have led to business opportunities, including client and teaming opportunities. Merrill Lynch managers have been, and continue to be, hostile to Complainant and have made no genuine attempt to mentor or otherwise assist him, or to regularly include him in meetings, social outings or networking opportunities as detailed above. Complainant's managers and co-workers have also made clear his outsider status through actions and words, including through a steady array of race-based

---

[3] This trip had originally been scheduled in July 2008 and was cancelled by Investment Bankers, Inigo Garcia-Palencia, Emmanuel Crenne, and Quinton Zunga due to their cultural fear of "being kidnapped" in the region. Days before the rescheduled trip to the DRC in August 2008, these same individuals again began canceling their existing itineraries for travel to the DRC. Complainant honored his promise and obligation to the DRC based on the Letter of Intent to the DRC from Merrill Lynch.

[4] Complainant requested that a more senior FA, Glenn Capel, who is also African American, accompany him on this trip in a position of strength and experience in the Global Wealth Management in return for a split on any successful business. Capel is a class member in the *McReynolds* case. Due to Merrill Lynch's prior treatment of Capel with respect to potential business opportunities, his involvement in this deal was not disclosed until just before the trip so as to try to avoid Complainant from being retaliated against due to Capel's inclusion on this deal. Capel incurred the travel cost in hopes for reimbursement if the deal was successful.

358275-1

Victor Jarvis
Charge of Discrimination, p. 7

comments. For example, Darby referred to the Nigerian members of the DRC consulting team, many of whom were PhDs and Deans as "those Nigerians" and further stated to Complainant that "you don't know what those Nigerians are up to," or words to that effect. Darby also belittled Capel to Complainant by rolling his eyes when Complainant relayed to Darby that Capel had added value on their trip.

Another aspect of Merrill Lynch's systemic discrimination, culture and hostile environment is the retaliation that results when employees raise issues involving discrimination and exclusion, and are associated with other individuals who do the same. Complainant's treatment is illustrative of this culture and the inadequacy of the Firm's HR department. Because of Complainant's affiliation with Capel, a class member in the *McReynolds* case, Darby and Merrill Lynch took action against Complainant and he was targeted for retaliation.

Complainant received no support or guidance from his management team during his tenure. To the contrary, on account of not only his race, but also the race of his potential clients, and in retaliation for his association with a *McReynolds* class member, Complainant's Manager only served to undermine his work and credibility.

As a result of Merrill Lynch's discrimination and retaliation, Complainant was terminated from his position in approximately December 2008.

### IV. Complainant Has Suffered Damages

As a result of Merrill Lynch's actions and inaction described above, Complainant has suffered substantial damages, including lost wages and other benefits. Complainant has also suffered embarrassment and humiliation, and his career has been irreparably damaged as a result of Respondent's unlawful conduct. Complainant has suffered loss of enjoyment of life, inconvenience and other pecuniary and non-pecuniary losses as a direct result of Respondent's conduct, as well as incurring attorneys' fees and costs. Punitive damages are appropriate due to Respondent's intentional conduct and continued reckless indifference to the federally protected rights of Complainant and other African-Americans.

### V. Complainant's Charge Is Representative

Complainant's treatment is consistent with a company-wide pattern and practice of discrimination and retaliation and with systemic disparate impact discrimination against African-Americans. This charge is representative and intended to place Respondent on further notice of class-wide allegations of unlawful race discrimination and retaliation.

358275-1

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Victor I. Jarvis<br>4014 Braddock Road<br>High Point, NC 27265 | From: | Greensboro Local Office<br>2303 West Meadowview Road<br>Suite 201<br>Greensboro, NC 27407 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 435-2009-00365 | NINA N. TROXLER, Investigator | (336) 547-4097 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____  8/18/10
JOSE G. ROSENBERG,                  (Date Mailed)
Local Office Director

Enclosures(s)

cc: Brian Moynihan
Corporate Human Resources Director
BANK OF AMERICA CORPORATE CENTER
100 North Tryon Street
Charlotte, NC 28255