IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| VICTOR IRVING JARVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV896 |
| | ) | |
| BANK OF AMERICA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a Motion for Summary Judgment [Doc. #19] filed by Defendant Bank of America Corporation ("Bank of America" or "Defendant") in this employment discrimination action filed by *pro se* Plaintiff Victor Irving Jarvis ("Jarvis" or "Plaintiff") pursuant to Title VII of the Civil Rights Acts of 1964, 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2012), and 42 U.S.C.A. § 1981 (West 2012). For the reasons set out below, the Court recommends that Defendant's Motion for Summary Judgment be granted, and that this action be dismissed.

I.   CLAIMS AND PROCEDURAL HISTORY

In May 2007, Plaintiff was hired as a financial advisor trainee with Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch")[1] in Greensboro, North Carolina. (Azzarita Aff. [Doc.

---

[1] Plaintiff alleges that Merrill Lynch was subsequently purchased by Defendant Bank of America. Defendant Bank of America contends that Merrill Lynch remains a wholly-owned subsidiary of Bank of America, and that Merrill Lynch is the proper Defendant in this action rather than Bank of America. (Def.'s Answer [Doc. #9] at 1 & n.1.) However, Defendant Bank of America has nevertheless answered on behalf of both Merrill Lynch and Bank of America, and in the Answer and the pleadings, "Defendant" is used to refer "collectively to Merrill Lynch and Bank of America." (Id.)

#20-1] at 2.) When he was hired, Plaintiff entered a training program for financial advisors known as the "Paths of Achievement" ("POA") program.[2] However, Plaintiff contends that, as an African-American, he was treated differently and less favorably than employees who were not African-American, such as by inequitable distribution of client accounts, less favorable team assignments, and fewer referrals and leads. (Compl. [Doc. #1] at 3-5, 11.) In addition, Plaintiff alleges that in August 2008, he took a company-sponsored trip to the Democratic Republic of the Congo, and took with him an individual who had previously asserted race discrimination claims against Merrill Lynch, Mr. Glenn Capel. (Id. at 5, 12-14.) After the trip, Defendant Merrill Lynch issued to Plaintiff a "Letter of Education" regarding alleged company policy violations surrounding this trip. (Id. at 12.) Specifically, the Letter of Education [Doc. #20-1 at 29-30] informed Plaintiff that he should not have met with government officials from the Democratic Republic of Congo or paid for the government officials' dinners without obtaining approval from the Office of General Counsel or Governmental Affairs. In addition, the Letter of Education informed Plaintiff that he should not have engaged in meetings with officials of the Democratic Republic of Congo without the "Global Markets & Investment Banking Division" team, and should not have bought dinners or given any gifts to the government officials while he was on the trip without obtaining pre-approval. (Id.) The Letter

---

[2] Defendant notes that the POA program was a training program for individuals with minimal experience in the financial industry who were seeking to become Financial Advisors. POA financial advisors such as Plaintiff were required by Merrill Lynch to meet certain objective quarterly performance hurdles during the second, or production, phase of the POA program. For each performance hurdle, the trainee could score as either "meets requirements" or "does not meet requirements." (Azzarita Aff. [Doc. #20-1] at 3). Those trainees who scored as "meets requirements" were considered to be on target. (Id.)

acknowledged that Plaintiff may have believed his actions had been approved or sanctioned; therefore, no disciplinary action was taken, and Plaintiff was encouraged to consult with management in the future regarding company policies and procedures. (Id.) Plaintiff alleges that the "Letter of Education" and the lack of support for his efforts on the trip were evidence of race discrimination and were retaliation for his association with Mr. Capel.

Plaintiff alleges that he remained employed with Merrill Lynch from May 2007 until December 2008, when Merrill Lynch instituted a Reduction In Force that resulted in the discharge of approximately 200 financial advisor trainees, including Plaintiff. (Jarvis Dep. [Doc. #20-2] at 20-21.) Following his discharge, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission and received a Right to Sue letter from the EEOC on August 18, 2010. (Compl. [Doc. #1] at 14.) He filed the present action on November 18, 2010, seeking declaratory relief and damages. In his Complaint, Plaintiff contends that his discharge was the result of race discrimination and retaliation. Plaintiff also contends that during his employment, he was the victim of racial discrimination and retaliation, and that the racial discrimination he suffered is part of a nationwide, systemic pattern of discrimination. Plaintiff cites a pending class action lawsuit in the Northern District of Illinois against Merrill Lynch as support. (Compl. [Doc. #1] at 7.)

Defendant has now filed the present motion for summary judgment, contending that Plaintiff has failed to establish an evidentiary basis for any of his claims, which Defendant has

identified as three Title VII claims: (1) a claim for denial of opportunities based on race; (2) a claim for discriminatory discharge; and (3) a claim for retaliation.[3]

II.   DISCUSSION

   A.   Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The party moving for summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). "A mere scintilla of evidence supporting the [non-moving party's] case is insufficient" to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (noting that a non-moving party "may not rest upon the mere

---

[3] In its Motion for Summary Judgment, Defendant noted that Plaintiff's Complaint could also be read as asserting a claim for hostile work environment and infliction of emotional distress. However, in his Response, Plaintiff has conceded that he has not stated separate claims for hostile work environment or infliction of emotional distress. (Pl.'s Response [Doc. #22] ¶ 4.) Therefore, the three claims before the Court are the claims for discriminatory denial of opportunities, discriminatory discharge, and retaliation.

-4-

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial").

In this case, the Court considers these summary judgment standards in the context of the framework established for Title VII claims. Title VII prohibits an employer from discharging an individual or otherwise discriminating against him with respect to compensation, terms, conditions, or privileges of employment, because of that person's race. 42 U.S.C. § 2000e-2(a)(1). If a plaintiff has no direct evidence of discrimination, he may use the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Under that framework, if the plaintiff establishes a prima facie case of discrimination, the burden of going forward shifts to the employer, who must articulate a legitimate, non-discriminatory reason for the alleged discriminatory act. Burdine, 450 U.S. at 253. Should the employer carry this burden, the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. Id.; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). The ultimate burden of proving discrimination remains at all times with the plaintiff. Id.[4]

---

[4] The Court notes that Plaintiff has asserted the same claims under both Title VII and 42 U.S.C. § 1981. Section 1981 ensures that certain rights, such as the right to make and enforce contracts, are enjoyed by all persons. 42 U.S.C.A. § 1981. Plaintiff "must satisfy the same elements to establish a prima facie case of racial

B.     Analysis of Plaintiff's Claims

   1.     Denial of Opportunities Based on Race

In this case, Plaintiff complains first that he was denied certain opportunities by Merrill Lynch because of his race, specifically by inequitable distribution of client accounts, less favorable team assignments, and fewer referrals and leads, and as proof of this disparity Plaintiff cites an alleged nationwide, systemic pattern of discrimination at Merrill Lynch. It is unclear whether Plaintiff seeks to bring a pattern or practice claim, or whether he seeks to invoke pattern or practice to support his burden of proof under McDonnell Douglas. To the extent that plaintiff seeks to bring a separate pattern or practice claim, the Fourth Circuit has held that "individuals do not have a private, non-class cause of action for pattern or practice discrimination under § 1981 or Title VII." Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 759 (4th Cir.1998); see also Williams v. Giant Food Inc., 370 F.3d 423, 430 n.3 (4th Cir. 2004) ("Lowery . . . held that an individual plaintiff (as opposed to a class action plaintiff) cannot pursue a cause of action based on a pattern or practice of discrimination or invoke the proof scheme described in International Brotherhood of Teamsters v. United States . . . . " (internal

---

discrimination under either Title VII or 42 U.S.C. § 1981." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 & n.1 (4th Cir. 2004); see also Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1136 (4th Cir. 1988) (Burdine standard applicable to cases under Title VII and section 1981, where proof of discriminatory intent is required). The Fourth Circuit has noted that "[o]ur case law recognizes that 'the framework of proof for disparate treatment claims—that is, whether the employer intentionally discriminated against the employee—is the same for actions brought under Title VII or § 1981.'" Lowery v. Circuit City Stores, Inc., 158 F.3d 742 (4th Cir. 1998) (quoting Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 910 (4th Cir. 1989)), vacated on other grounds, 527 U.S. 1031 (1999). In the present case, as in Lowery, the Court's discussion "regarding the Plaintiffs' Title VII claims encompasses [his] claims under § 1981." Id.

citation omitted)); Williams v. Aluminum Co. of Am., 457 F. Supp. 2d 596 (M.D.N.C. 2006).

To the extent Plaintiff is asserting an individual claim for denial of opportunities under the McDonnell Douglas scheme, Plaintiff would be required to establish that he is a member of a protected class, that he suffered an adverse employment action, and that a similarly-situated employee not in the protected class was treated more favorably. In considering the evidence presented by Plaintiff, it is unclear what specific incidents Plaintiff complains of and whether those incidents could be considered adverse employment actions. In his deposition, Plaintiff stated that he had equal access to training, seminars, events and clinics. (Jarvis Dep. [Doc. #20-2] at 23-25.) Plaintiff also stated that he took potential clients to the Davis Cup and the Women's U.S. Open, with tickets provided by Merrill Lynch. (Id. at 25.) In addition, Plaintiff does not dispute the evidence provided by Defendant [Doc. #20-1 at 21-28] showing that Plaintiff received emails of possible leads and opportunities to establish new business along with other members of the Greensboro office.

Moreover, to the extent Plaintiff complains generally regarding team assignments, a lack of leads, and the distribution of accounts, Plaintiff has simply failed to present any evidence that he was denied opportunities that similarly-situated non-African-American employees were given.[5] Plaintiff has not presented any factual support for his contention that opportunities or accounts were distributed on a discriminatory basis, or that non-African-American employees

---

[5] Plaintiff does contend that he was assigned a "damaged client," and that this client should not be considered a "lead" provided by Merrill Lynch management. However, Plaintiff still provides no evidence that his co-workers were given leads that he was not given.

were given preferential account distribution. In sum, Plaintiff fails to establish a prima facie case because he fails to establish a genuine issue of fact on whether anyone not in the protected class was treated more favorably than he was treated. Therefore, the Court will recommend that summary judgment be granted to Defendant on Plaintiff's claims of discriminatory denial of opportunities.

        2.        Discriminatory Discharge

Plaintiff also asserts a claim for discriminatory discharge. To state a prima facie case of discriminatory discharge in the Reduction In Force context, Plaintiff must show that (1) he is a member of a protected class; (2) he was selected for discharge from a larger group of candidates, 3) he was performing at a level substantially equivalent to the lowest level of that in the group retained, and 4) the process of selection produced a residual work force that contained persons outside the protected class who were performing at a level lower than that at which the plaintiff was performing. See Corti v. Storage Tech. Corp., 304 F.3d 336, 341 n.6 (4th Cir. 2002); Mitchell v. Data General Corp., 12 F.3d 1310 (4th Cir. 1993). In this case, Defendant contends that Plaintiff has failed to present evidence to establish either of the last two elements of this prima facie case.

In support of its contentions, Defendant has presented the affidavit of Frank Azzarita, who served as the vice president and administrative manager for Merrill Lynch in the Greater Carolina Complex and coordinated the POA program. (Azzarita Aff. [Doc. #20-1] at 3.) In his affidavit, Mr. Azzarita states that in December 2008, due to the worsening economy, Merrill Lynch instituted a reduction in force which resulted in the dismissal of approximately 200 POAs

including Plaintiff Jarvis. (Id.) Mr. Azzarita notes that in determining whether a POA would be dismissed in the reduction in force, Merrill Lynch used seven specific criteria, based on whether the POA: (1) was currently not on target to reach the goals of the POA program; (2) had been at Merrill Lynch for 6 months or greater; (3) had been on target for less than 60% of the months in 2008; (4) had not received a quarterly POA bonus after July 2008; (5) had achieved less than 75% of the annuitized assets hurdle; (6) had achieved less than 75% of the current production hurdle; and (7) had achieved less than 100% of the current total assets hurdle. (Id. ¶ 9.)

Mr. Azzarita states that Plaintiff "met each of the seven criteria at the time of the reduction in force in December 2008." (Id. ¶ 10.) Specifically according to Mr. Azzarita, Plaintiff was not on target to meet the goals of the POA program. Plaintiff began his employment in May 2007, and had been employed more than 6 months as of December 2008. Plaintiff had been on target for only 44% of the months in 2008. He had not received a quarterly bonus in 2008. Plaintiff had achieved only 41% of the annuitized assets hurdle. He had achieved only 38% of the production hurdle. Finally, Plaintiff had achieved only 59%, less than 100%, of the current total assets hurdle.

Plaintiff does not dispute that there was a reduction in force at Merrill Lynch during which approximately 200 POA financial advisors were terminated based on this criteria. Plaintiff also does not present any evidence to establish that the criteria were inaccurately applied to him. In his Response, Plaintiff criticizes the criteria used to determine which employees would be discharged during the Reduction in Force, and contends that the hurdles established in the POA

program were "arbitrary and capricious." (Pl. Mem. [Doc. #23] at 3). However, Plaintiff fails to offer any evidence that the criteria were discriminatory or that other employees were judged by a different, more favorable standard. Plaintiff has also not pointed to any evidence showing that the standard was not applied consistently or that anyone who was performing at a lower level than he was performing was retained.

Plaintiff does attempt to point to a different metric, other than the seven criteria. Specifically, Plaintiff contends that three employees who were retained had lower scores than he did on the "Focus on Growth" metric. However, in his Affidavit, Mr. Azzarita notes that the "Focus on Growth" metric was "unrelated to the reduction in force," and that this program "did not apply to [Plaintiff] at all (or to the three individuals [Plaintiff] refers to in his response as having been retained despite their purported lower performance)" because the "Focus on Growth" was an incentive program for individuals who had already graduated from the POA program. (Azzarita Second Aff. [Doc. #24-2] at 3.) Moreover, Mr. Azzarita states that each of the three employees cited by Plaintiff as having been retained were retained because they did not meet the seven objective criteria that were used in the reduction in force. (Id.) Plaintiff has not submitted any evidence to the contrary.

Finally, Plaintiff alleges that he did not receive any "prior written counseling" prior to his termination (Pl. Mem. [Doc. #23] at 2), but he fails to present any evidence that any other employee discharged during the Reduction in Force received such counseling. Plaintiff further claims that "management arbitrarily distribut[ed] financial assets" to employees they wished to retain (id. at 2-3), however he fails to offer any evidence of a specific person outside the

-10-

protected class who was not terminated in the Reduction in Force because they received such an arbitrary distribution.

Therefore, having considered the evidence presented, the Court concludes that Plaintiff has failed to present evidence that he was performing at a level substantially equivalent to the lowest level of that in the group retained following the Reduction in Force, or that the process of selection produced a residual work force that contained persons outside the protected class who were performing at a level lower than that at which the plaintiff was performing, based on the seven objective criteria that were applied across all of the POAs. Therefore, because Plaintiff has failed to establish a prima facie case of discriminatory discharge, the Court will recommend that Defendant's Motion for Summary Judgment be granted as to this claim.

### 3. Retaliation

Finally, Plaintiff has asserted a claim for "retaliation." "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e–3(a)). To state a prima facie case of retaliation under Title VII, Plaintiff must establish that (1) he engaged in a protected activity; (2) Defendant took materially adverse action against him; and (3) a sufficient causal connection exists between the protected activity and Defendant's adverse action. Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011).

In this case, Plaintiff's retaliation claim is apparently based on his discharge during the Reduction in Force, as well as the "Letter of Education" issued to him after his 2008 trip to the Congo. (Pl.'s Mem. [Doc. #23] at 4.) In its Motion for Summary Judgment, Defendant argues that there is no evidence that Plaintiff engaged in a protected activity, and that there is no evidence of any causal connection between any protected activity and any adverse action.

With respect to the first prong of the prima facie case, Plaintiff must establish that he engaged in "protected activity." Such protected activity may be classified as either participation or opposition. Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). Activities that constitute participation are stated in the statute: making a charge; testifying; assisting; or participating in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C.A. § 2000e-3(a). Plaintiff does not allege that he engaged in any participatory activity. He testified during his deposition [Doc. #20-2 at 18] that he filed his EEOC complaint after he was discharged. Therefore, Plaintiff has no evidence that he was discharged because of participatory activity. Morrall v. Gates, 370 F. App'x 396, 398 n.2 (4th Cir. 2010) ("Her claim of retaliation fails because her first EEO contact occurred after her termination, such that any claim of alleged retaliatory conduct based upon that contact fails as a matter of law").

Opposition activity "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin, 149 F.3d at 259. Plaintiff testified during his deposition [Doc. #20-2 at 10-11] that he did not ever complain to Merrill Lynch management that assets

-12-

were being reassigned in an unfair manner, and did not ever complain to anyone at Merrill Lynch that he was being discriminated against because of his race. Plaintiff does not allege that he protested against racial discrimination in any manner or otherwise engaged in oppositional activity.

Reviewing Plaintiff's subsequent briefing, it appears that Plaintiff contends that he was retaliated against because when he traveled to the Congo in 2008, he took Mr. Capel, who had previously joined in a class action discrimination lawsuit against Defendant. Thus, it appears that the protected activity cited by Plaintiff is his association with Mr. Capel. However, Plaintiff has failed to present any basis to conclude that his association with Mr. Capel was itself a protected activity. To the extent that the protected activity was Mr. Capel's participation in litigation, the Supreme Court in Thompson v. North American Stainless, LP, recognized a potential cause of action for retaliation by an employee who alleged that he was fired in retaliation for his fiancee's filing of a sex discrimination charge. Thompson, 131 S. Ct. 863 (2011). In so holding, the Supreme Court noted that "Title VII's antiretaliation provision prohibits any employer action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and alleged "third-party reprisals" must be considered based upon "the particular circumstances." Thompson, 131 S. Ct. at 868. In the present case, however, Plaintiff has not presented any evidence to establish that his relationship with Mr. Capel or the particular circumstances in this case would be sufficient to constitute such "third-party reprisal."

-13-

Moreover, even if Plaintiff could establish a protected activity based on his association with Mr. Capel in light of Thompson, there is no evidence of a connection between that activity and any materially adverse action. Plaintiff complains that the issuance of the Letter of Education constituted a materially adverse action. However, Plaintiff also has not disputed Defendant's showing by affidavit and other evidence that the issuance of the Letter of Education to Plaintiff had "no bearing on the termination of [Plaintiff's] employment." (Azzarita Aff. [Doc. #20-1] at 7.) The Letter itself did not result in any adverse consequence, and was designed solely to train Plaintiff regarding conduct that Defendant considered a violation of company policy. The Letter itself specifically acknowledged that Plaintiff may have believed his conduct was authorized, and therefore no discipline was imposed, and Plaintiff was simply encouraged to work with management if new questions or issues arose.[6] In addition, to the extent that Plaintiff contends that the materially adverse action was his discharge, Defendant has presented the evidence set out above regarding Defendant's discharge as part of the Reduction in Force under the seven established criteria, and Plaintiff has failed to present any evidence to establish that those reasons were false or that the discharge was related in any way to Mr. Capel. Thus, Plaintiff has failed to present sufficient evidence from which a reasonable jury could find for Plaintiff on his retaliation claim, and Defendant's Motion for Summary Judgment should be granted on Plaintiff's claim of retaliation.

III. CONCLUSION

---

[6] In addition, even if issuance of the Letter could constitute a materially adverse action, which is unlikely, there is no basis to conclude that there was any causal connection between the Letter and Plaintiff's association with Mr. Capel, or that the letter was in any way retaliation for Mr. Capel's involvement in unrelated litigation.

For the reasons set out above, the Court concludes that Defendant's Motion for Summary Judgment should be granted on all claims.

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. #19] be granted, and that this action be dismissed.

This, the 17th day of December, 2012.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge